**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SARAH HOPKINS,**

                    **Plaintiff,**

**v.**                                                          **1:11-CV-936 (NAM/CFH)**


**WILLIAM GLADYS, in his official and individual**
**capacities, TROY CITY POLICE DEPARTMENT, and**
**DAWN DAUNBROPHY, in her official and individual**
**capacities, ROSA, ROBERT THAYER, MUIBAH**
**COLEMAN, in their official and individual capacities,**
**NYS DIVISION OF PAROLE,**

                    **Defendants.**
_____

**APPEARANCES:**                                **OF COUNSEL:**

Sarah Hopkins, pro se
Valatie, New York

Charles B. Sarris                               Ian H. Silverman, Esq.
Corporation Counsel, City of Troy               Deputy Corporation Counsel
City Hall 1776 6th Avenue
Troy, New York 12180
Attorneys for Defendants Gladys and
Troy City Police Department

Hon. Eric T. Schneiderman                       Adele Taylor Scott, Esq.
Attorney General for the State of New York      Assistant Attorney General
The Capitol
Albany, New York 12224-0341
Attorneys for Defendants Rosa, Thayer, Coleman,
and NYS Division of Parole

**Hon. Norman A. Mordue, U.S. District Judge:**

## MEMORANDUM DECISION AND ORDER

**I.      INTRODUCTION**

Plaintiff pro se Sarah Hopkins filed a complaint alleging that William Gladys, Troy City Police Department, Dawn Daunbrophy,[1] Rosa, Robert Thayer, Muibah Coleman, and the New York State Division of Parole, defendants, violated her constitutional rights. Defendants Gladys and the Troy City Police Department ("the Troy defendants") move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint. *See* Dkt. No. 12. Defendants Rosa, Thayer, Coleman, and the New York State Division of Parole ("the DOP defendants") move pursuant to Rule 56 for summary judgment dismissing all claims against them. *See* Dkt. No. 23. Plaintiff did not file a response to either motion.[2]

## II.    THE COMPLAINT

According to the complaint:

---

[1]Defendant Dawn Daunbrophy has not appeared in this action. A summons was issued, Dkt. No. 9, but to date no acknowledgment of service has been filed.

[2]On November 18, 2011, plaintiff filed a "Notice of Motion of Extension" to respond to the motion to dismiss. In it she states:

1.    The plaintiff moves to ask for an extension of time based on the plaintiff currently resides in a half-way house, To Wit: Perrin House.
2.    The plaintiff is in a drug/alcohol center at New choices five days a week.
3.    The plaintiff is asking for an extension until she graduates from program and can then concentrate on this civil case.
4.    For the foregoing reason the plaintiff prays that the court will grant her extension of 30-90 days, based on these facts.

Dkt. No. 17. The Court entered a Text Order entered on December 9, 2011, extending the deadline for the filing of a response until January 4, 2012.

On December 14, 2011, the DOP defendants filed a motion for summary judgment. Dkt. No. 23.

In a letter dated January 2, 2012, plaintiff advised the Court that she was incarcerated "and would like the extension of 90 days" to file her response to the motion to dismiss. Dkt. 24. The Court entered a Text Order on January 12, 2012 granting plaintiff's request for a second extension and directing that she file a response to the pending motions by January 30, 2012.

At about 3 or 4 p.m., on June 8th, 2011, plaintiff . . . was arrested and charged with possession of marijuana by Officer Gladys of the Troy City Police Department, and Parole Officer Thayer of the NYS Division of Parole, apparently there was "never" any physical evidence of marijuana.

The plaintiff was discharged from the program, for marijuana allegations, without any proof of marijuana, which led to parole violation . . . .

The plaintiff was transported to the Rensselaer County Jail, with a parole violation, stemming from her arrest, although there were no grounds for her arrest.

The aforesaid charges of possession of marijuana, was a falsified police report against the plaintiff.  There was, and is, no trace, whatsoever, of marijuana.

As a result of the misconduct . . . plaintiff . . . experienced humiliation, emotional distress, pain and suffering, in connection with the charges which were lodged against her, and was otherwise damaged.

Complaint ¶¶ 10-14 (emphasis in original) (paragraph numbers and internal citations omitted).

The complaint further alleges that defendants conspired to deny plaintiff's constitutional rights and that the City of Troy Police Department and NYS Division of Parole are responsible because of their "authorization, condonation, and ratification" of the individual defendants' alleged conduct.  The complaint contains allegations of failure to discipline, failure "to take adequate precautions in the hiring, promotion, and retention" of defendants, failure "to forward to the office of the NYS Division of Parole of Rensselaer, and Columbia County, evidence of criminal acts committed by police personnel", and failure to establish a "meaningful departmental system for dealing with unethical, or unlawful acts toward citizens of the community".  Complaint ¶ 17.

Under the heading "Federal Causes of Action" plaintiff alleges that defendants violated her "first amendment right to freedom of expression"; "fourth amendment right to be free from unlawful seizure of her person"; "fifth and fourteenth amendment rights to due process of law"; right to be "free from unjustified police conduct"; and "eighth amendment right to be free from cruel and unusual punishment."  Complaint ¶ 20.

Under the heading "Pendent Causes of Action", the complaint asserts "false arrest and imprisonment, malicious prosecution, abuse of process, prima facie tort, conspiracy tort, negligence, and gross negligence under the laws of the Untied States Constitution."  Complaint ¶ 22.

Plaintiff seeks compensatory and punitive damages, attorney's fees, dismissal of her parole violation, and immediate release from custody.

Attached to the complaint are three exhibits.[3]  Exhibit A is an "Arrest Report" by Officer Gladysz which indicates that on June 8, 2011, at 3:46 p.m., he arrested plaintiff for the offenses of "Poss Marijuana - Knowingly" and "Violation of Parole".  The arrest report contains plaintiff's address, lists her age as "20 yrs", and identifies her sex as "M". The arrest report indicates that plaintiff's "Condition . . . at Arrest" was both "Impaired Drugs" and "App Norm".  The arrest report indicates "No" in the section titled "Evidence".  The "Narrative" states: "At the above date, time and location, [plaintiff] was arrested during a parole check with Parole Officer Thayer. [Plaintiff] was found to be in possession of marijuana in her bedroom. [Plaintiff] was taken into custody without incident, transported to CS and processed."

Exhibit B is a "Community Supervision Case Summary Report", which states:

Subject's current violation involves the subject using illicit drugs in the bedroom of the supportive living house and refusing to open the door while she was using the drugs.  Upon entering the residence subject was taken out of her room, search was conducted, and numerous half smoked marijuana cigarettes were found throughout the apartment, including two glass baby jars filled with marijuana roaches.

---

[3]On a motion to dismiss, a complaint includes any written instrument attached to it as an exhibit. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.2002).

Under "Present Status" the report states: "A case conference was held with SPO Coleman and A/S Rosa at which time a parole violation warrant was authorized and subject was subsequently arrested for the possession of controlled substance and a new arrest occurred. Subject is currently housed in Rensselaer County Jail."

Exhibit C is a "Parole Violation Report" which charges plaintiff with violating four conditions of release. Each charge stems from plaintiff's alleged possession of marijuana on June 8, 2011.

## III.    SECTION 1983

Section 1983 allows an action at law against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

## IV.    RULE 8

The Troy defendants move to dismiss of plaintiff's false arrest and due process claims on the ground that the complaint does not comply with Rule 8 of the Federal Rules of Civil Procedure. Rule 8 requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of this requirement is to ensure that the pleading gives "'fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, . . . prepare an adequate defense'" and determine whether the doctrine of res judicata is applicable. *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708, *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (quoting *Brown v. Califano*, 75 F.R.D. 497,

498 (D.D.C. 1977))) (other citation omitted).  A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

As discussed below, the Court finds that the complaint sufficiently states claims of false arrest and violation of due process against the Troy defendants.  Accordingly, the Troy defendants' Rule 8 motion is denied.

## V.  MOTION TO DISMISS

### A.  Applicable Law

On a motion to dismiss under Rule 12(b)(6), the Court reviews the complaint to determine whether it has "facial plausibility" and pleads enough facts to allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. When considering a dismissal motion to which a plaintiff has not responded the court must "assume the truth of [the] pleading's factual allegations and test only its legal sufficiency" which is "a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000).  Therefore, if a complaint sufficiently states "a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." *Id*.

When the plaintiff in a civil rights action proceeds pro se, a court must construe the complaint "especially liberally", *see Jacobs v. Mostow*, 271 Fed.Appx. 85, 87 (2d Cir. 2008)

(citing *Fernandez v. Chertoff*, 471 F.3d 45, 51 (2d Cir. 2006)), and interpret his or her

submissions to raise the strongest arguments that they suggest. *See Triestman v. Fed. Bureau*

*of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). A court should not dismiss without granting

leave to amend when a liberal reading of a pro se complaint gives any indication that a valid

claim might be stated. *See Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999).

Although the Troy defendants submitted an affidavit by Officer William Gladysz[4] and

several exhibits in support of their motion, the Court has confined its review to the complaint

and the documents attached to it. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42,

46-48 (2d Cir. 1991) ("a Rule 12(b)(6) motion challenges the facts alleged on the face of the

complaint ... or, more accurately, the sufficiency of the statements in the complaint"); *Leonard*

*F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir.1999) ("In adjudicating a Rule

12(b)(6) motion, a district court must confine its consideration 'to facts stated on the face of

the complaint, in documents appended to the complaint or incorporated in the complaint by

reference, and to matters of which judicial notice may be taken.'") (quoting *Allen v. WestPoint-*

*Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)).

### B.    Equal Protection Clause

The Troy defendants move to dismiss plaintiff's equal protection claim. Even read

liberally, the complaint does not contain an equal protection claim. Defendants' motion is

therefore denied as moot.

### C.    False Arrest

---

[4]The Court assumes Gladysz to be the correct spelling but utilizes "Gladys" when quoting the complaint.

The Troy defendants move to dismiss plaintiff's false arrest claim on the ground that there was probable cause to arrest plaintiff. Probable cause is an affirmative defense to a false arrest claim. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or § 1983.") (internal quotation marks and citations omitted). While normally asserted in an answer, "a court may grant a pre-answer motion to dismiss on the basis of an affirmative defense when such defense appears on the face of the complaint." *Scott v. City of White Plains*, No. 10-Civ. 1887, 2012 WL 1267873, at *9 (S.D.N.Y. Apr. 10, 2012) (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998)).

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law". *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citing *Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir.1995); *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir.1995)) (internal citation omitted). "Under New York law, a plaintiff claiming false arrest must show, inter alia, that the defendant intentionally confined him without his consent and without justification." *Id*. In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime. *Id*. "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers". *Id*.

The Troy defendants assert that the complaint and its exhibits demonstrate that there was probable cause to arrest plaintiff.  The exhibits to which the Troy defendants refer are:  the arrest report which states that plaintiff possessed marijuana and the case summary and parole violation report which state that plaintiff had marijuana cigarettes in her apartment.

Plaintiff, however, states in her complaint that the possession of marijuana charge was falsified and that there was "never" any marijuana in her apartment (or possession).  In support of her claim, plaintiff refers to the portion of Officer Gladysz's arrest report which indicates that there was no evidence recovered from her apartment.  Indeed, box number 61 in the arrest report is titled "Evidence" and contains the words "Yes" and "No"; there is an "x" next to the word "No".  Assuming the truth of the factual assertions in the complaint, the Court concludes it sufficiently states a false arrest claim.  Accordingly, the motion to dismiss the false arrest claim is denied.

### D.     Due Process

The Troy defendants move to dismiss the due process claim on the ground that the documents attached to her complaint contradict plaintiff's assertion that she did not possess marijuana.  Where "the Fourth Amendment provides an explicit textual source of constitutional protection against [a type] of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analy[sis]...." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Thus, plaintiff's Fourteenth Amendment substantive due process claim merges with her Fourth Amendment false arrest claim because the due process claim arises from the same set of actions that allegedly violated her Fourth Amendment rights.  *See, e.g.*, *Maliha v. Faluotico*, 286 Fed.Appx. 742, 744 (2d Cir. 2008)

9

(holding that the plaintiff's substantive due process claim that the defendants falsified official documents by "exaggerating the evidence and making slanderous statements" merged with the plaintiff's false arrest claim because the due process claim arises from the same set of actions that allegedly violated his Fourth Amendment rights). The Court therefore dismisses plaintiff's Fourteenth Amendment due process claim as merged with her Fourth Amendment claim. Accordingly, defendants' motion to dismiss plaintiff's Fourteenth Amendment substantive due process claim is granted.

### E.    Qualified Immunity

Officer Gladysz moves to dismiss the false arrest claim on the ground that he is entitled to qualified immunity for his actions. Qualified immunity applies "'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 416 (2d Cir. 1999) (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)).

In this case, plaintiff alleges that Officer Gladysz was one of the arresting officers and that he was present in her apartment. Crediting, as it must when deciding a motion to dismiss, the allegation in the complaint that there was no marijuana whatsoever in plaintiff's apartment and that Officer Gladysz falsified the arrest report, the Court finds qualified immunity inappropriate at this point. If Officer Gladysz arrested plaintiff for marijuana possession knowing that she had none, it would not have been objectively reasonable for him to believe that probable cause existed. Accordingly, Officer Gladysz's motion to dismiss on the ground of qualified immunity is denied.

### F.    Municipal Liability

The City of Troy Police Department argues that there is no basis in the record to impose liability on it for the actions of any of its employees.  To hold a municipality liable for the unconstitutional actions of its employees, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (citing *Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978)); *accord Harper v. City of N.Y.*, 424 Fed.Appx. 36, 38 (2d Cir. 2011).

The allegation that the municipality failed to train and supervise Officer Gladysz properly is, in light of plaintiff's allegations, sufficient to withstand Rule 12(b)(6) dismissal. *See generally City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  Thus, the Police Department's motion to dismiss is denied.

### G.    Notice of Claim

The Troy defendants move to dismiss all state claims on the ground plaintiff failed to file a Notice of Claim.  Pursuant to New York General Municipal Law § 50-i:

> No action . . . shall be prosecuted or maintained against a city . . . for personal injury, wrongful death or damage to real or personal property alleged to have been sustained by reason of the negligence or wrongful act of such city . . . or of any officer, agent or employee thereof . . . unless, (a) a notice of claim shall have been made and served upon the city . . . .

N.Y. Gen. Munic. Law § 50i; *see also Fincher v. County of Westchester*, 979 F.Supp. 989, 1002 (S.D.N.Y. 1997) ("The notice of claim requirements apply equally to state tort claims brought as pendent claims in a federal civil rights action." ).

Plaintiff states in her complaint that her claims "are Federal in jurisdiction by law, thus

not requiring a N.Y. State procedure of a notice of claim." Complaint ¶ 21. The Court therefore construes the complaint to be comprised solely of federal claims. To the extent, however, that the complaint may be read to assert state claims against the Troy defendants those claims must be dismissed, without prejudice, since plaintiff concedes that she did not file a notice of claim.[5]

## VI.    SUMMARY JUDGMENT

### A.    Applicable Law

Summary judgment is appropriate only when there is no genuine issue with regard to any material fact and the moving party is entitled to judgment as a matter of law. Stated otherwise, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). When deciding a summary judgment motion, the court must "resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999). Where, as here, the nonmovant is proceeding *pro se*, the court must read that party's papers liberally and interpret them "to raise the strongest arguments that they suggest." *Id.* (citation omitted).

### B.    Evidence

In support of their motion for summary judgment, defendants Thayer, Rosa, Coleman and the Division of Parole submitted a declaration by Thayer and a number of exhibits.

---

[5]Defendants do not argue that plaintiff's failure to file a notice of claim prevents her from pursuing her federal claims.

Plaintiff has not responded to their motion.[6]  In his declaration, Officer Thayer states:

1.  I am employed by the New York State Department of Corrections and Community Supervision (DOCCS), Division of Parole, as a Parole Officer.

2.  I am named as a defendant in this action and I make this declaration in support of summary judgment based upon my personal knowledge, and upon my review of documents kept in the ordinary course of business by the Division of Parole.

3.  I am assigned to persons on Community Supervision within the City of Troy and the County of Rensselaer.

4.  On or about April 28, 2010, plaintiff, Sarah Hopkins, was convicted in Supreme Court, Rensselaer County, upon a plea of guilty, to Burglary in the 3rd Degree (Penal Law § 140.20), and sentenced to 2 1/3 to 7 years of incarceration.

5.  At the sentencing, plaintiff was given an opportunity to participate in the Road to Recovery and placed in Willard Drug Treatment Center under parole supervision.

6.  Upon information and belief, although plaintiff has had approximately 12 prior arrests, this is the first time that she has been released to parole supervision.

7.  Plaintiff was originally placed in Phoenix House, and transferred to the Elizabeth House in Troy, which was subsequently determined to be an inappropriate placement for plaintiff.

8.  Plaintiff was subsequently placed in the . . . "820 Program" residential treatment program at 111 2nd Avenue in Troy, New York.  Plaintiff was also scheduled for supplemental day treatment programming at Conifer Park to address her history of substance abuse recidivism.

9.  On or about June 8, 2011 at 2:00 p.m. my office received a telephone call from the Director of the program notifying us that plaintiff was using drugs in her room.

10.  I contacted the Troy City police to request back-up to conduct a home visit. Troy City Police Officer William Gladys met me at 111 2nd Avenue, where we were directed to plaintiff's room.

12.[sic] The rules and regulations of Parole Supervision, which [p]laintiff agreed to abide by as a condition of her release require plaintiff to allow Parole Officers to search her person, residence and property without a warrant, so I asked the House Manager to use the key to open the door.

13.  When the door was opened the room was filled with smoke that smelled like marijuana.

---

[6]Defendants served plaintiff with a copy of the "Notification of the Consequences of Failing to Respond to a Summary Judgment Motion" as required by the Rule 56.2 of Local Rules of the Northern District of New York.  Dkt. No. 23.

14. Officer Gladys escorted [p]laintiff out of the room. I had no physical contact with plaintiff.

15. I then conducted a search and found numerous half smoked marijuana cigarettes throughout the apartment, and two glass baby food jars filled with partially smoked marijuana cigarettes.

16. When I confronted plaintiff with the evidence, plaintiff admitted to me that she had been smoking marijuana since her release from Willard.

17. Upon information and belief, she was taken into custody by the Troy City Police, without incident, and charged with possession of marijuana and with a violation of her parole.

18. I turned the evidence taken from plaintiff's apartment over to the Troy City Police Department.

19. Upon plaintiff's arrest, DOCCS, on June 8, 2011, supervising Parole Officer Muibah Coleman and Area Supervisor Felix Rosa held a case conference at which it was determined that a [p]arole violation warrant should issue.

20. Plaintiff was issued a notice of violation advising plaintiff of the four parole violation charges being asserted against her, and advising plaintiff of her right to a preliminary hearing, which was scheduled for June 17, 2011.

21. Plaintiff waived her right to a preliminary hearing on or about June 10, 2011 while in the care and custody of the Columbia County Jail.

22. At the final parole violation hearing held on August 29, 2011, plaintiff pled guilty to Charge 4, charging that plaintiff, among other things, violated her parole by "failing to participate and successfully complete treatment program . . . and comply with all the requirements of that program."

23. At the conclusion of the hearing, plaintiff's parole was revoked and restored, and plaintiff was placed back into drug treatment.

24. Upon information and belief, plaintiff violated her parole again on or about November 2, 2011 with the use of "Suboxouno" an opiate often substituted of [sic] Heroine on the Street.

15. Given the above circumstances, I do not believe that a reasonable parole officer would believe that anything I did or failed to do in relation to the revocation of plaintiff's parole violated any of plaintiff's federally protected rights.

Attached to Officer Thayer's declaration are eight exhibits. Exhibit A is a "Uniform Sentence & Commitment" reflecting plaintiff's sentence in connection with her plea of guilty to the charge of "burglary 3rd degree".

Exhibit B is "a Certificate of Release to Parole Supervision" confining plaintiff to the

Willard Drug Treatment Center and setting forth the conditions of release.

Exhibit C is the "Arrest Report" by Officer Gladysz dated June 8, 2011 charging plaintiff with possession of marijuana and a violation of parole.

Exhibit D is a "Parole Analysis and Recommendation" by Officers Coleman and Rosa recommending that plaintiff be declared "delinquent" and that arrangements be made "for Final Revocation Hearing".

Exhibit E is a "Notice of Violation" informing plaintiff of her right to a preliminary hearing (which she waived) and a Violation of Release Report advising plaintiff of the four charges against her: possession of a controlled substance ("charge #01"); possession of drug paraphernalia ("charge #02"); failure to abstain from the sale, purchase or use of marijuana ("charge#03"); and failure to complete the recommended drug treatment program ("charge#04").

Exhibit F is a transcript of the "Final Hearing" regarding plaintiff's alleged parole violations.  The hearing was held on August 29, 2011.  At the hearing, plaintiff, who was represented by an assistant public defender, pleaded guilty to "charge #04", which alleged:

> Sarah Hopkins violated Rule # 12 of the rules governing her release; I will enter, participate, and successfully complete treatment program, . . . and will comply with all the requirements of that program and any after care treatment recommended; to wit: on 6/8/11 the subject was discharged from the 820 River Street, supportive living program due to rules violation.

The three other charges were dismissed at the hearing and the assistant public defender advised the administrative law judge that "the U[nlicensed] P[ossession of] M[arijuana] charge" had been dismissed in Troy City Court "for failure of proof in the case."

Exhibit G is a "Parole Revocation Decision Notice" sustaining the fourth charge "based

on the information in the Violation of Release Report" and withdrawing charges one, two and three.

Exhibit H is a "Notice of Violation" regarding a subsequent allegation of parole violation.

### C.    Eleventh Amendment

The Eleventh Amendment bars "federal suits against state governments by a state's own citizens." *Woods v. Rondout Valley Cent. Sch.*, 466 F.3d 232, 236 (2d Cir.2006) (citation omitted). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state." *Id.* (quoting *Regents of The Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)). The Eleventh Amendment also bars claims against arms of the state and any persons authorized to act on behalf of the state who were acting in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70–71 (1989). Accordingly, the Division of Parole and all claims against defendants Rosa, Thayer, and Coleman, in their official capacities, are dismissed.

### D.    Absolute Immunity

Defendants Coleman and Rosa assert that they are entitled to absolute immunity for their prosecutorial role in the issuance of the warrant and accordingly seek summary judgment dismissing the claims against them. In his declaration, Officer Thayer states: "Upon plaintiff's arrest, DOCCS, on June 8, 2011, supervising Parole Officer Muibah Coleman and Area Supervisor Felix Rosa held a case conference at which it was determined that a Parole violation warrant should issue." One of the exhibits attached to Officer Thayer's declaration is a "Bureau Analysis", which recommends that plaintiff be "[d]eclare[d] delinquent as of 6/8/11"

16

and that a "Final Revocation Hearing" be arranged:

> The subject is a . . . female parolee presently serving a 2-4-0/7-0-0, year sentence for Burglary 3rd degree (D). The subject was at liberty for 1 year, 2 months, and 20 days, when it was determined that she had in our opinion violated her conditions of release when she chose to disregard said rules in lieu of an altered state of consciousness induced by copious amounts of tetrahydrolcannabinol (THC). Despite the graduated sanctions imposed by the officer of record the subject has remained resistant and proven herself either unwilling or unable to stay within the confines of her release conditions. We were of course concerned that such behavior may place her at risk to either herself or the community. On 6/8/11 these concerns were expressed during a conference with Area Supervisor Felix Rosa at which time an approval was granted for the issuance of [a] warrant . . . the subject was taken into custody and lodged at the Rensselaer County Jail.
>
>              There are no appropriate alternatives in this instance . . . . On 6/10/11 the subject received her notice of violation and waived her preliminary hearing. The final hearing has been scheduled for 7/19/11 at the Columbia County Jail. In the interim we are requesting that she be declared delinquent.

The Bureau Analysis is "Submitted By Senior Parole Officer Mulbah D. Coleman" and "Approved By Area Supervisor Felix Rosa".

"A limited number of officials are entitled to absolute immunity from § 1983 damages for their official acts." *Scotto v. Almenas*, 143 F.3d 105, 110 (2d Cir. 1998). "Parole officers are entitled to absolute immunity when they perform judicial functions." *Id*. at 111. The determination of whether a defendant's actions were prosecutorial or adjudicatory in nature and therefore absolutely immune from § 1983 damages for their acts, or, investigatory or administrative in nature and therefore only protected by qualified immunity, requires an examination of "the role played" by the parole officer defendant. *Id*. at 110-11. Generally, "this is a factual inquiry". *Id*. at 111. "Parole officers . . . receive absolute immunity for their actions in initiating parole revocation proceedings and in presenting the case for revocation to hearing officers, because such acts are prosecutorial in nature." *Id*. at 112.

17

In this case, both Officer Thayer's declaration and the Bureau Analysis identify Coleman as a senior parole officer and Rosa as an area supervisor and indicate that they were present when it was determined that a parole violation warrant should issue.  This evidence also indicates that Coleman submitted the recommendation that plaintiff "be declared delinquent" and that Rosa approved the recommendation.  The evidence, however, does not identify who issued, or decided to issue, the warrant.  Nor does it contain any specific facts showing that Coleman and Rosa played prosecutorial roles in the events at issue.  The evidence before the Court is therefore insufficient to establish that Coleman and Rosa are entitled to absolute immunity for their actions.  Thus, their motion summary judgment as a matter of law on the ground of absolute immunity is denied.

### E.    Warrantless Search

Defendants Thayer, Rosa and Coleman move for summary judgment on plaintiff's claim that the warrantless entry and search of her residence violated the Fourth Amendment.  It is well settled that "Fourth Amendment protections extend only to 'unreasonable government intrusions into ... legitimate expectations of privacy.'" *United States v. Thomas*, 729 F.2d 120, 122 (2d Cir.1984) (quoting *United States v. Chadwick*, 433 U.S. 1, 7 (1977)).  "For an individual's expectation of privacy to be legitimate, [s]he must have 'exhibited an actual (subjective) expectation of privacy' and the expectation must be 'one that society is prepared to recognize as reasonable.'" *United States v. Reyes*, 283 F.3d 446, 457 (2d Cir. 2002) (quoting *Thomas*, 729 F.2d at 122) (additional quotation marks omitted).

Plaintiff's parolee status diminished her actual expectation of privacy in her residence because one of her conditions of release required her to "permit [her] Parole Officer to visit

[her] at [her] residence and . . . permit the search and inspection of [her] person, residence and property." Thayer Decl., Ex. B; *see, e.g.*, *Reyes*, 283 F.3d at 457 ("It is beyond doubt that Reyes's actual expectation of privacy in the environs of his home was necessarily and significantly diminished because Reyes was a convicted person serving a court-imposed term of federal supervised release that mandated home visits 'at any time' from his federal probation officer.").

The Second Circuit has held "that among '[t]he rights diminished by parolee status [are] Fourth Amendment protections.'" *Id*. at 458 (quoting *Thomas*, 729 F.2d at 123); *accord United States v. Grimes*, 225 F.3d 254, 258 (2d Cir. 2000) (" [P]arole justifies some departure from traditional Fourth Amendment standards."). One of the principal purposes of a parole officer's observation and supervision responsibilities is to ensure that a convicted person under supervision does not again commit a crime. *Id*. at 459. A parole officer has a duty to "investigate whether a parolee is violating the conditions of [her] parole-one of which, of course, is that the parolee commit no further crimes-when the possibility of violation is brought to the officers attention." *Reyes*, 283 F.3d at 459. According to the conditions of release, plaintiff agreed that she would not "behave in such manner as to violate the provisions of any law to which I am subject which provide for a penalty of imprisonment".

Parole Officer Thayer states in his declaration that his office "received a telephone call from" the director of the residential treatment program where plaintiff was living "notifying us that plaintiff was using drugs in her room." Officer Thayer further states that he contacted the police department to request "back-up" before going to plaintiff's residence to conduct a home visit. When they arrived, Officer Thayer "asked the House Manager to use the key to open the

19

door." Officer Thayer asserts that plaintiff's apartment "was filled with smoke that smelled like marijuana." Officer Thayer states that he searched her apartment "and found numerous half smoked marijuana cigarettes . . . and two glass baby food jars filled with partially smoked marijuana cigarettes." Officer Thayer avers that when he confronted plaintiff with the evidence she admitted that "she had been smoking marijuana".

"Whether a particular warrantless parole search was unreasonable and thus prohibited by constitutional proscription must turn on whether the conduct of the parole officer was rationally and reasonably related to the performance of the parole officer's duty." *United States v. Newton*, 369 F.3d 659, 665-66 (2d Cir. 2004) (citing *People v. Huntley*, 43 N.Y.2d 175, 401 N.Y.S.2d 31, 35 (N.Y. 1977)). In this case, the uncontroverted facts show that Officer Thayer received information that plaintiff was using drugs in her room - a violation of her conditions of release. *See* Thayer Decl. Exh. B. ("I will not use or possess any drug paraphernalia or use or posses any controlled substance without proper medical authorization"). Officer Thayer was justified in investigating this information given his duty "to ensure that a convicted person under supervision does not again commit a crime." *Reyes*, at 459. No rational finder of fact could conclude that Officer Thayer's search of plaintiff's apartment was not rationally and reasonably related to the performance of his duty as a parole officer. Thus, summary judgment dismissing the warrantless search claim against Officer Thayer is appropriate.

Summary judgment dismissing the warrantless search claims against Rosa and Coleman is also appropriate because there is no evidence suggesting they had any personal involvement in the entry into or search of plaintiff's residence. "It is well settled in this Circuit

that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citation and internal quotation marks omitted). Thus, they are entitled to summary judgment as a matter of law for lack of personal involvement.

### G.    False Arrest

Defendants Thayer, Rosa and Coleman move for summary judgment dismissing plaintiff's false arrest claim on the ground that they had probable cause for her arrest. Under federal law, "probable cause serves as a complete defense to the charges of false arrest and malicious prosecution." *Zanghi v. Incorporated Village of Old Brookville*, 752 F.2d 42, 45 (2d Cir. 1985); *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003). "Probable cause is established when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995); *accord Gerstein v. Pugh*, 420 U.S. 103, 111 (1975). In evaluating probable cause, courts consider the facts available to the officer at the time of the arrest. *Martinez v. Simonetti*, 202 F. 3d 625, 634 (2d Cir. 2000); *Lowth v. Town of Cheektowaga*, 82 F. 3d 563, 569 (2d Cir. 1996); *see also Broughton v. State of New York*, 37 N.Y.2d 451, 458 (1975). Normally, an arrest warrant issued from a neutral magistrate creates the presumption of probable cause. *See United States v. Ventresca*, 380 U.S. 102, 109 (1965); *Golino*, 950 F.2d at 870.

Moreover, it is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth. *See Daniels v. United*

*States*, 393 F.2d Cir. 359, 361 (D.C. Cir. 1968).  "[T]he determination of probable cause does not turn on whether [the fellow agent's] observations were accurate, but on whether [the arresting agent] was reasonable in relying on those observations."  *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (quoting *Bernard v. United States*, 25 F.3d 98, 102-03 (2d Cir. 1994)).

In his declaration, Officer Thayer states that on June 8, 2011, the date of plaintiff's arrest, his office received a telephone call from the director of the residential treatment program where plaintiff was living "notifying us that plaintiff was using drugs in her room." Officer Thayer avers that after requesting "back-up" from the Troy Police Department, he went to plaintiff's residence to conduct a "home visit".  Officer Thayer found plaintiff in her room, which was, according to Officer Thayer, full of smoke and smelled like marijuana.  Officer Thayer asserts that when he searched plaintiff's apartment he found "half smoked marijuana cigarettes throughout".  Since plaintiff has submitted no evidence in opposition to the summary judgment motion and her complaint is unverified, the evidence submitted by defendants Thayer, Rosa and Coleman stands uncontroverted.  Based on this evidence, the Court concludes that Officer Thayer had probable cause to arrest plaintiff after discovering marijuana in her room.  *See Jaeqly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006) ("An officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." (internal quotation marks omitted)); *see also Abreu v. Romero*, 466 Fed.Appx. 24. 26 (2d Cir. 2012) (concluding that summary judgment dismissing false arrest and malicious prosecution claims was proper

because the defendant law enforcement officers "had probable cause to arrest [the plaintiff] after they discovered over two ounces of marijuana in his bedroom."). Thus, defendant Thayer is entitled to summary judgment on the false arrest claim. Moreover, even assuming that defendants Rosa and Coleman were personally involved in plaintiff's arrest through their participation in the issuance of the warrant, they would still be entitled to summary judgment based on the presence of probable cause.

### H.    Malicious Prosecution

To recover on a malicious prosecution claim, a plaintiff must prove: (1) that the defendant either commenced or continued a criminal proceeding against plaintiff; (2) that the criminal proceeding terminated in plaintiff's favor; (3) that there was no probable cause for the criminal proceedings; and (4) that the criminal proceeding was instituted in actual malice. *See Broughton*, 37 N.Y.2d at 457; *Russo v. State of New York*, 672 F.2d 1014, 1019 (2d Cir. 1982).

In this case, even if she were to establish "favorable termination" status based on the dismissal of three of the four charges of parole violations and unlawful possession of marijuana charge, *see* Transcript of Parole Violation Hearing, pp. 4-5, it would not cure plaintiff's failure to demonstrate the absence of probable cause for the criminal proceedings against her in the first instance. As discussed above, there are no triable issues concerning the existence of probable cause to support plaintiff's arrest on the alleged parole violations. Further, the Court can discern no evidence of malice on the part of defendants in reviewing the present record. Therefore, an award of summary judgment against plaintiff on his claims of malicious prosecution by defendants Thayer, Rosa and Coleman is warranted.

## I.    Due Process

Plaintiff claims in her complaint that she was denied procedural due process of law during her parole revocation proceedings.  Defendants Thayer, Rosa, and Coleman seek summary judgment dismissing this claim.  "Due process requires, as a general matter, an 'opportunity to be heard at a meaningful time and in a meaningful manner.'" *Calhoun v. New York State Div. of Parole Officers* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) internal quotation marks omitted)).  In the context of the revocation of supervised release and parole, the Second Circuit has instructed as follows:

> We have recognized that the loss of liberty entailed in the revocation of probation is worthy of some due process protection. That protection takes the form of a collection of due process rights. Foremost among these is the right to a hearing at which the court determines two issues: whether the probationer violated a condition of probation as a matter of fact and, if so, whether this fact warrants revocation.  In addition, as a matter of due process, a probationer is entitled to: written notice of the claimed violations of his probation; disclosure of the evidence against him; an opportunity to be heard in person and to present witnesses and documentary evidence; the right to confront and cross-examine adverse witnesses (unless the hearing officer finds good cause for not allowing confrontation); a neutral hearing body; and a written statement by the factfinder as to the evidence relied on and the reasons for revoking probation.

*United States v. Sanchez*, 225 F.3d 172, 175 (2d Cir. 2000) (internal quotation marks and citations omitted).

Defendants have submitted documentary evidence showing that plaintiff received: written notice of the alleged violations and evidence that would be used against her; notice of her right to a preliminary hearing, which she waived; a hearing before an administrative law judge at which, while represented by counsel, plaintiff pleaded guilty; and a written parole revocation decision.  No reasonable fact finder could conclude that defendants deprived plaintiff of due process during the parole revocation proceedings.  Indeed, plaintiff submitted

no evidence contradicting defendants' evidence.  Summary judgment, therefore, is appropriate.

### J.    Conspiracy

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).  In this case, even viewing the evidence submitted by defendants in the light most favorable to plaintiff the Court can find nothing that would indicate that defendants Thayer, Rosa and Coleman, or any other defendant conspired to inflict an unconstitutional injury on plaintiff through her arrest or their prosecution of her alleged parole violations.  Moreover, nothing in the complaint can be read to suggest a conspiracy.  Accordingly, to the extent the complaint may be read to assert a § 1983 conspiracy claim, defendants Thayer, Rosa and Coleman are entitled to summary judgment dismissing such a claim.

### K.    Qualified Immunity

Defendants Thayer, Rosa, and Coleman are also protected against plaintiff's claims of false arrest and malicious prosecution by qualified immunity.  In *Pearson v. Callahan*,555 U.S.223, 231 (2009), the Supreme Court explained that:

> The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity balances two important interests--the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's

> error is "a mistake of law, a mistake of fact, or a mistake based on
> mixed questions of law and fact." *Groh v. Ramirez*, 540 U.S. 551,
> 567 (2004) (KENNEDY, J., dissenting) (citing *Butz v. Economou*,
> 438 U.S. 478, 507 (1978) (noting that qualified immunity covers
> "mere mistakes in judgment, whether the mistake is one of fact or
> one of law")).

555 U.S. at 231.  For example, in cases of alleged false arrest, objective reasonableness does not turn on whether probable cause in fact existed.  *See Martin v. Malhoyt*, 830 F.2d 237, 263 (D.C. Cir. 1987).  Rather, objective reasonableness can exist if it is shown  "either (a) that it was objectively reasonable for the officer to believe that probable cause existed, or (b) that officers of reasonable competence could disagree on whether the probable cause test was met." *Robison v. Via*, 821 F.2d 913, 921 (2d Cir. 1987) (citations omitted).  Summary judgment on the basis of qualified immunity is appropriate where the only conclusion a rational jury could reach is that under the circumstances it was objectively reasonable for the officer to believe there was probable cause to make the arrest or that reasonably competent police officers could disagree about the legality of the arrest.  *See Ricciuti v. New York City Transit Auth.*, 124 F. 3d at 128; *Lennon v. Miller*, 66 F. 3d 416, 421 (2d Cir. 1995).

     In the circumstances presented to Officer Thayer, neither plaintiff nor the Court has identified a case demonstrating a clearly established rule prohibiting him from acting as he did in this case.  At the very least, defendants Thayer, Rosa and Coleman have established that reasonably competent police officers could disagree on the question of probable cause in this case.  Based thereupon, their motion for summary judgment plaintiff's claims for false arrest and malicious prosecution on the alternative ground of qualified immunity must be granted.

### L.    State Law Claims

     Defendants Thayer, Rosa and Coleman ask the Court to decline to exercise

supplemental jurisdiction over any state law claims alleged in the complaint. Plaintiff has stated in her complaint that she only intends to advance federal claims. Thus, defendants' motion for summary judgment dismissing state law claims is denied as moot.

## VII.    FIRST AND EIGHTH AMENDMENT CLAIMS

Although defendants seek dismissal of all claims against them, none have addressed the claims in the complaint that they violated plaintiff's First Amendment right to freedom of expression and subjected her to cruel and unusual punishment in violation of the Eighth Amendment. The Court therefore has not reviewed those claims.

## VIII.    CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Troy defendants' motion to dismiss pursuant to Rule 8 is **DENIED**; and it is further

**ORDERED** that the Troy defendants' motion to dismiss plaintiff's state law claims for failure to file a notice of claim is **GRANTED**; and it is further

**ORDERED** that plaintiff's state law claims against the Troy defendants are **DISMISSED** without prejudice; and it is further

**ORDERED** that plaintiff's Fourteenth Amendment substantive due process claims against the Troy defendants are **DISMISSED** as they are merged with her Fourth Amendment claims; and it is further

**ORDERED** that the Troy defendants' motion to dismiss is otherwise **DENIED**; and it is further

**ORDERED** that the motion for summary judgment by defendants Coleman and Rosa

27

on the ground of absolute immunity is **DENIED**; and it is further

ORDERED that the DOP defendants' motion for summary judgment on state law claims is **DENIED** as moot; and it is further

ORDERED that the DOP defendants' motion for summary judgment is otherwise **GRANTED** in its entirety; and it is further

ORDERED that the Division of Parole is **DISMISSED** as a defendant in this action; and it is further

ORDERED that all claims brought against defendants Rosa, Thayer and Coleman in their official capacities are **DISMISSED**; and it is further

ORDERED that all warrantless search, false arrest, malicious prosecution, due process, and conspiracy claims against defendants Rosa, Thayer and Coleman are **DISMISSED**.

**IT IS SO ORDERED.**

Dated: September 7, 2012

_____
Honorable Norman A. Mordue
U.S. District Judge