**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**SARAH HOPKINS,**

        **Plaintiff,**

                                        **1:11-CV-936 (NAM/CFH)**

**v.**

**WILLIAM GLADYS, in his official and individual capacities, TROY CITY POLICE DEPARTMENT, and DAWN DAUNBROPHY, in her official and individual capacities, ROSA, ROBERT THAYER, MUIBAH COLEMAN, in their official and individual capacities, NYS DIVISION OF PAROLE,**

        **Defendants.**

---

**APPEARANCES:**

Sarah Hopkins, Plaintiff Pro Se
Valatie, New York

Donald J. Shanley, Esq., of Counsel
Pattison, Sampson, Ginsberg & Griffin, P.C.
22 First Street
Troy, New York 12181-0208
For Defendants William Gladysz and Troy City Police Department

**Hon. Norman A. Mordue, Senior U.S. District Judge:**

### MEMORANDUM DECISION AND ORDER

### I.    INTRODUCTION

    Plaintiff pro se Sarah Hopkins filed a complaint (Dkt. No. 1) alleging that William

Gladysz,[1] Troy City Police Department, Dawn Daunbrophy,[2] Rosa, Robert Thayer, Muibah

---

[1] William Gladysz's name is misspelled (Gladys) in the complaint.

[2] Defendant Dawn Daunbrophy has not appeared in this action. A summons was issued, Dkt. No. 9, but to date no acknowledgment of service has been filed.

Coleman and the New York State Division of Parole, defendants, violated her constitutional rights. Previously, the Court dismissed defendants New York State Division of Parole, Rosa, Robert Thayer and Muibah Coleman from this action. Dkt. No. 42. The Court also dismissed plaintiff's Fourteenth Amendment and pendent state claims but found plaintiff sufficiently stated Fourth Amendment false arrest, false imprisonment and malicious prosecution claims against the Troy City Police Department and Officer William Gladysz. Dkt. No. 28. These defendants move for summary judgment on the remaining Fourth Amendment claims. Dkt. No. 41.

## II. COMPLAINT

According to the complaint:

> At about 3 or 4 p.m., on June 8th, 2011, plaintiff . . . was arrested and charged with possession of marijuana by Officer Gladys of the Troy City Police Department, and Parole Officer Thayer of the NYS Division of Parole, apparently there was "<u>never</u>" any physical evidence of marijuana.
> The plaintiff was discharged from the program, for marijuana allegations, without any proof of marijuana, which led to parole violation . . . .
> The plaintiff was transported to the Rensselaer County Jail, with a parole violation, stemming from her arrest, although there were no grounds for her arrest.
> The aforesaid charges of possession of marijuana, was a falsified police report against the plaintiff. There was, and is, no trace, whatsoever, of marijuana.
> As a result of the misconduct . . . plaintiff . . . experienced humiliation, emotional distress, pain and suffering, in connection with the charges which were lodged against her, and was otherwise damaged.

Complaint ¶¶ 10-14 (emphasis in original) (paragraph numbers and internal citations omitted).

The complaint further alleges that defendants conspired to deny plaintiff's constitutional rights and that the City of Troy Police Department and NYS Division of Parole are responsible because of their "authorization, condonation, and ratification" of the individual defendants' alleged conduct. The complaint contains allegations of failure to discipline, failure "to take adequate precautions in the hiring, promotion, and retention" of defendants, failure "to forward to

2

the office of the NYS Division of Parole of Rensselaer, and Columbia County, evidence of criminal acts committed by police personnel", and failure to establish a "meaningful departmental system for dealing with unethical, or unlawful acts toward citizens of the community". Complaint ¶ 17.

Under the heading "Federal Causes of Action" plaintiff alleges that defendants violated, inter alia, her "first amendment right to freedom of expression" and "eighth amendment right to be free from cruel and unusual punishment." Complaint ¶ 20.

Plaintiff seeks compensatory and punitive damages, attorney's fees, dismissal of her parole violation, and immediate release from custody.

Attached to the complaint are three exhibits. Exhibit A is an "Arrest Report" by Officer Gladysz which indicates that on June 8, 2011, at 3:46 p.m., he arrested plaintiff for the offenses of "Poss Marijuana - Knowingly" and "Violation of Parole". The arrest report contains plaintiff's address, lists her age as "20 yrs", and identifies her sex as "M". The arrest report indicates that plaintiff's "Condition . . . at Arrest" was both "Impaired Drugs" and "App Norm". The arrest report indicates "No" in the section titled "Evidence". The "Narrative" states: "At the above date, time and location, the above named defendant was arrested during a parole check with Parole Officer Thayer. Defendant was found to be in possession of marijuana in her bedroom. Defendant was taken into custody without incident, transported to CS and processed."

Exhibit B is a "Community Supervision Case Summary Report", which states:

Subject's current violation involves the subject using illicit drugs in the bedroom of the supportive living house and refusing to open the door while she was using the drugs. Upon entering the residence subject was taken out of her room, search was conducted, and numerous half smoked marijuana cigarettes were found throughout the apartment, including two glass baby jars filled with marijuana roaches.

3

Under "Present Status" the report states: "A case conference was held with SPO Coleman and A/S Rosa at which time a parole violation warrant was authorized and subject was subsequently arrested for the possession of controlled substance and a new arrest occurred. Subject is currently housed in Rensselaer County Jail."

Exhibit C is a "Parole Violation Report" which charges plaintiff with violating four conditions of release. Each charge stems from plaintiff's alleged possession of marijuana on June 8, 2011.

## III. EVIDENCE

In support of their motion for summary judgment, defendants submitted a declaration by Parole Officer Thayer with a number of exhibits and an affidavit by Officer Gladysz. Plaintiff has not responded to their motion.[3] In his declaration, Officer Thayer states:

1. I am employed by the New York State Department of Corrections and Community Supervision (DOCCS), Division of Parole, as a Parole Officer.
2. I am named as a defendant in this action and I make this declaration in support of summary judgment based upon my personal knowledge, and upon my review of documents kept in the ordinary course of business by the Division of Parole.
3. I am assigned to persons on Community Supervision within the City of Troy and the County of Rensselaer.
4. On or about April 28, 2010, plaintiff, Sarah Hopkins, was convicted in Supreme Court, Rensselaer County, upon a plea of guilty, to Burglary in the 3rd Degree (Penal Law § 140.20), and sentenced to 2 1/3 to 7 years of incarceration.
5. At the sentencing, plaintiff was given an opportunity to participate in the Road to Recovery and placed in Willard Drug Treatment Center under parole supervision.
6. Upon information and belief, although plaintiff has had approximately 12 prior arrests, this is the first time that she has been released to parole

---

[3]Defendants served plaintiff with a copy of the "Notification of the Consequences of Failing to Respond to a Summary Judgment Motion" as required by the Rule 56.2 of Local Rules of the Northern District of New York. Dkt. No. 41.

4

supervision.
7. Plaintiff was originally placed in Phoenix House, and transferred to the Elizabeth House in Troy, which was subsequently determined to be an inappropriate placement for plaintiff.
8. Plaintiff was subsequently placed in the . . . "820 Program" residential treatment program at 111 2nd Avenue in Troy, New York. Plaintiff was also scheduled for supplemental day treatment programming at Conifer Park to address her history of substance abuse recidivism.
9. On or about June 8, 2011 at 2:00 p.m. my office received a telephone call from the Director of the program notifying us that plaintiff was using drugs in her room.
10. I contacted the Troy City police to request back-up to conduct a home visit. Troy City Police Officer William Gladys met me at 111 2nd Avenue, where we were directed to plaintiff's room.
12.[sic] The rules and regulations of Parole Supervision, which Plaintiff agreed to abide by as a condition of her release require plaintiff to allow Parole Officers to search her person, residence and property without a warrant, so I asked the House Manager to use the key to open the door.
13. When the door was opened the room was filled with smoke that smelled like marijuana.
14. Officer Gladys escorted Plaintiff out of the room. I had no physical contact with plaintiff.
15. I then conducted a search and found numerous half smoked marijuana cigarettes throughout the apartment, and two glass baby food jars filled with partially smoked marijuana cigarettes.
16. When I confronted plaintiff with the evidence, plaintiff admitted to me that she had been smoking marijuana since her release from Willard.
17. Upon information and belief, she was taken into custody by the Troy City Police, without incident, and charged with possession of marijuana and with a violation of her parole.
18. I turned the evidence taken from plaintiff's apartment over to the Troy City Police Department.
19. Upon plaintiff's arrest, DOCCS, on June 8, 2011, supervising Parole Officer Muibah Coleman and Area Supervisor Felix Rosa held a case conference at which it was determined that a [p]arole violation warrant should issue.
20. Plaintiff was issued a notice of violation advising plaintiff of the four parole violation charges being asserted against her, and advising plaintiff of her right to a preliminary hearing, which was scheduled for June 17, 2011.
21. Plaintiff waived her right to a preliminary hearing on or about June 10, 2011 while in the care and custody of the Columbia County Jail.
22. At the final parole violation hearing held on August 29, 2011, plaintiff pled guilty to Charge 4, charging that plaintiff, among other things, violated her parole by "failing to participate and successfully complete treatment program . . . and comply with all the requirements of that program."

23. At the conclusion of the hearing, plaintiff's parole was revoked and restored, and plaintiff was placed back into drug treatment.
24. Upon information and belief, plaintiff violated her parole again on or about November 2, 2011 with the use of "Suboxouno" an opiate often substituted of [sic] Heroine on the Street.
15. Given the above circumstances, I do not believe that a reasonable parole officer would believe that anything I did or failed to do in relation to the revocation of plaintiff's parole violated any of plaintiff's federally protected rights.

Attached to Officer Thayer's declaration are eight exhibits. Exhibit A is a "Uniform Sentence & Commitment" reflecting plaintiff's sentence in connection with her plea of guilty to the charge of "burglary 3rd degree".

Exhibit B is "a Certificate of Release to Parole Supervision" confining plaintiff to the Willard Drug Treatment Center and setting forth the conditions of release.

Exhibit C is the "Arrest Report" by Officer Gladysz dated June 8, 2011 charging plaintiff with possession of marijuana and a violation of parole.

Exhibit D is a "Parole Analysis and Recommendation" by Officers Coleman and Rosa recommending that plaintiff be declared "delinquent" and that arrangements be made "for Final Revocation Hearing".

Exhibit E is a "Notice of Violation" informing plaintiff of her right to a preliminary hearing (which she waived) and a Violation of Release Report advising plaintiff of the four charges against her: possession of a controlled substance ("charge #01"); possession of drug paraphernalia ("charge #02"); failure to abstain from the sale, purchase or use of marijuana ("charge#03"); and failure to complete the recommended drug treatment program ("charge#04").

Exhibit F is a transcript of the "Final Hearing" regarding plaintiff's alleged parole violations. The hearing was held on August 29, 2011. At the hearing, plaintiff, who was

6

represented by an assistant public defender, pleaded guilty to "charge #04", which alleged:

> Sarah Hopkins violated Rule # 12 of the rules governing her release; I will enter, participate, and successfully complete treatment program, . . . and will comply with all the requirements of that program and any after care treatment recommended; to wit: on 6/8/11 the subject was discharged from the 820 River Street, supportive living program due to rules violation.

The three other charges were dismissed at the hearing and the assistant public defender advised the administrative law judge that "the U[licensed] P[ossession of] M[arijuana] charge" had been dismissed in Troy City Court "for failure of proof in the case."

Exhibit G is a "Parole Revocation Decision Notice" sustaining the fourth charge "based on the information in the Violation of Release Report" and withdrawing charges one, two and three.

Exhibit H is a "Notice of Violation" regarding a subsequent allegation of parole violation.

In his affidavit, Officer Gladysz states that on June 8, 2011, he was working "with the Parole Department in checking out residences in the Lansingburgh section of the City of Troy looking for parole violations." Officer Gladysz met Parole Officer Thayer at approximately 3:00 p.m. at 111 Second Avenue in Troy to check on a parolee living at that address. At Parole Officer Thayer's request, the house manager used a key to open the door to plaintiff's apartment. Inside, Officer Gladysz escorted plaintiff to the living room "and stood by her while Parole Officer Thayer searched her bedroom". Officer Gladysz stated in his affidavit that "at no time did I search the plaintiff's apartment nor did I search her person". Officer Thayer advised him that he found "numerous half-smoked marijuana cigarettes and two containers filled with partially smoked marijuana cigarettes." Officer Gladysz stated that he "heard plaintiff admit to Parole Officer Thayer that she had been smoking marijuana."

7

Parole Officer Thayer gave Officer Gladysz the marijuana he found in plaintiff's apartment. After plaintiff arrived at the police station, Officer Gladysz "processed the plaintiff on said charges; and as part and parcel of the processing routine, I searched the person of the plaintiff and found nothing."

Officer Gladysz stated that he "later discovered that plaintiff was remanded to the Rensselaer County Jail on parole violation charges and after a hearing conducted, plaintiff entered a plea of guilty to one or more of such charges."

Officer Gladysz attached his incident and arrest reports to his affidavit. Officer Gladysz acknowledges that the arrest report he prepared "does contain a check-marked 'no' . . . in block no. '61'" regarding "Evidence" but states that he uses the Troy Police Department computer system to prepare the arrest report and "the computer always answer[s]" the questions for box numbers 60 and 61 "no" and that "so far as" he knows, there is "no way" he can "change these answers spit out by the computer". Officer Gladysz asks the Court to "note that the fact of such computer check-marks is fully belied by the fact that in preparing my handwritten Incident Report . . . it was clearly stated by me that as a result of a search of plaintiff's bedroom there was ' . . . located two small containers of marijuana". Officer Gladysz states that the police department took possession of, and maintains, this evidence.

## IV.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate only when there is no genuine issue with regard to any material fact and the moving party is entitled to judgment as a matter of law. Stated otherwise, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational

8

trier of fact to find for the non-moving party," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). When deciding a summary judgment motion, the court must "resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999). Where, as here, the nonmovant is proceeding *pro se*, the court must read that party's papers liberally and interpret them "to raise the strongest arguments that they suggest." *Id.* (citation omitted).

### B. Section 1983

Section 1983 allows an action at law against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

### C. False Arrest

Officer Gladysz argues that plaintiff's false arrest claim should be dismissed because he had probable cause to arrest plaintiff. To establish a false arrest claim under § 1983, a plaintiff must show that: "(1) [defendants] intended to confine the plaintiff[;] (2) the plaintiff was conscious of the confinement[;] (3) the plaintiff did not consent to the confinement[;] and (4) the confinement was not otherwise privileged." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir.1994).

"Probable cause exists when an officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Savino v. City of N.Y*, 331 F.3d 63, 76 (2d Cir. 2003) (internal quotation marks and citation omitted). "Whether probable cause exists depends

upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citation omitted). An "officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause", and an arrest is lawful "as long as the circumstances, viewed objectively, justify that action." *Id*. at 153 (internal quotation marks and citation omitted).

Plaintiff states in her (unverified) complaint that the possession of marijuana charge was falsified and that there was "never" any marijuana in her apartment (or possession). In support of her claim, plaintiff refers to the portion of Officer Gladysz's arrest report which indicates that there was no evidence recovered from her apartment. Indeed, box number 61 in the arrest report is titled "Evidence" and contains the words "Yes" and "No"; there is an "x" next to the word "No". In his affidavit, Officer Gladysz explains, however, that "the computer always answer[s] these questions 'no'; and so far as I know there is no way that the arresting officer can change these answers". Officer Gladysz points out that he also stated in his arrest report that there were "two small containers of marijuana" found in plaintiff's bedroom, and avers that this evidence is still in the police department's possession.

Officer Gladysz's explanation for the "x" next to the word "No" in the arrest report is uncontradicted, as is the evidence that law enforcement found marijuana in plaintiff's bedroom on the date of her arrest. Thus, there are no triable issues of fact regarding plaintiff's false arrest claim; Officer Gladysz's affidavit and arrest report, which state that plaintiff was found in her apartment with marijuana, establish, as a matter of law, probable cause to arrest plaintiff.

### D. Malicious Prosecution

To recover on a malicious prosecution claim, a plaintiff must prove: (1) that the defendant

10

either commenced or continued a criminal proceeding against plaintiff; (2) that the criminal proceeding terminated in plaintiff's favor; (3) that there was no probable cause for the criminal proceedings; and (4) that the criminal proceeding was instituted in actual malice. *See Broughton*, 37 N.Y.2d at 457; *Russo v. State of New York*, 672 F.2d 1014, 1019 (2d Cir. 1982).

In this case, plaintiff cannot establish favorable termination: she pleaded guilty to "failing to participate and successfully complete treatment program . . . and comply with all the requirements of that program", in violation of her parole. Next, plaintiff has not adduced any evidence showing that there was an absence of probable cause for the criminal proceeding. The proceeding was brought based on the marijuana found in her apartment on the date of her arrest. Although plaintiff states in her complaint that she had no marijuana in her apartment, her complaint is unverified and given Officer Gladysz's uncontroverted explanation for the "x" in the "Evidence" box on his arrest report, there is no evidence sufficient to raise a question of fact as to whether she had marijuana in her apartment. Finally, the Court can discern no evidence of malice on the part of any defendant in reviewing the present record. Therefore, Officer Gladysz is entitled to summary judgment on plaintiff's malicious prosecution claim.

### E. Municipal Liability

The Troy Police Department argues that there is no basis in the record to impose liability on it for the actions of any of its employees. To hold a municipality liable for the unconstitutional actions of its employees, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (citing *Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978)); *accord Harper v. City of N.Y.*, 424 Fed.Appx. 36, 38 (2d Cir.

2011).

Plaintiff's bare allegation that the Troy Police Department failed properly to train and supervise Officer Gladysz is insufficient to withstand summary judgment. In his affidavit, Officer Gladysz outlined his education and studies at the Zone 5 Law Enforcement Academy. Officer Gladysz stated that the Troy Police Department gave him thirteen weeks of "in-house" field training, during which Officer Gladysz "served under the tutelage of a veteran police officer", and gives him "four days of in-service training each year of my employment as a police officer." In the absence of any evidence that the Troy Police Department failed to train or supervise its police officers properly, there are no issues of fact requiring trial and the Troy Police Department is entitled to summary judgment as to this claim.

**V. CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 41) is **GRANTED**; and it is further

**ORDERED** that defendants Gladysz and the Troy City Police Department are **DISMISSED** as defendants in this action; and it is further

**ORDERED** that plaintiff's Fourth Amendment claims are dismissed with prejudice; and it is further

**ORDERED** that this case be closed. The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

Date: March 4, 2014

Norman A. Mordue
Senior U.S. District Judge

12